UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID GALESKI,

                 Plaintiff,

v.

HEIDI E. WASHINGTON, et al.,

                 Defendants.

_____/

Case No. 1:24-cv-339

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

## I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  Plaintiff sues MDOC Director Heidi E. Washington and the MDOC.

In his complaint Plaintiff alleges that he and other inmates entered into a class settlement agreement in a consolidated state court case in the Washtenaw County Circuit Court.  (ECF No. 1, PageID.4–5); *see Does. v. Mich. Dep't of Corr.*, Nos. 13-1196-CZ & 15-1006-CZ (Washtenaw Co. Cir. Ct., Feb. 26, 2020. Plaintiff attaches a copy of the settlement agreement, which is dated February 26, 2020, to his complaint as an exhibit.  (ECF No. 1-1.)  Plaintiff also states that there was a consolidated federal lawsuit in the Eastern District of Michigan, asserting the same issues as those that were the subject of the state court case, and that the case was dismissed as a result of the state court settlement.  *See Does v. Mich. Dep't of Corr. et al.*, Nos. 2:13-cv-14356 & 2:16-cv-13765 (E.D. Mich. Mar. 20, 2020).  Plaintiff states that this was also true in *Does v. Snyder et al.*, No. 2:17-cv-11181 (E.D. Mich. Mar. 20, 2020).

Plaintiff also refers to a case he filed in this Court in 2023, which asserted the same facts and claims as those in the instant case, although in that case he was represented by an attorney.  *See Galeski v. Washington et al.*, Case No. 1:23-cv-481 (W.D. Mich. May 26, 2023).  That case was filed on May 9, 2023, and was voluntarily dismissed by Plaintiff shortly thereafter on May 26, 2023.  *Id.*, (ECF No. 5).

Plaintiff states that he was one of a class of individuals who were minors at that time in question and who the MDOC failed to protect from sexual abuse while housed in adult facilities.  Plaintiff states that as a minor, he was raped while in the prison shower, and that he contracted a sexually transmitted disease as a result. (ECF No. 1, PageID.5.)  A major term of the settlement was that the MDOC would provide each of the inmate plaintiffs with "confidential, trauma-centered treatment within the Michigan Department of Corrections custody."  (*Id.*, PageID.5-6.)

Plaintiff contends that Defendants have breached the settlement agreement by failing to procure "trauma-centered treatment" for Plaintiff.  (*Id.*, PageID.6.) Plaintiff claims that instead, Defendants provide him with mental health consultations lasting no more than five to ten minutes and that MDOC employees are limited licensed mental health providers who are incapable of providing a "community level of care" to sexual assault victims.  (*Id.*, PageID.6, 9.)  Plaintiff further states that after the execution of the settlement agreement, Plaintiff was mandatorily placed in the Michigan Sex Offender Program (MSOP), where he was exposed to perpetrators and their stories of sexual violence, which caused further mental health issues.  (*Id.*, PageID.8.)  Plaintiff claims that because Defendants failed to provide "confidential, trauma-centered treatment" at a "community level of care," they have violated 28 CFR § 115.83, which gives this Court jurisdiction over the matter.

Plaintiff seeks damages and equitable relief.  (*Id.*, PageID.8–9.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Breach of state court settlement agreement

To the extent Plaintiff is claiming that Defendants breached the settlement agreement, the Court lacks jurisdiction over this claim.  As noted above, the settlement agreement was reached as a result of a state court action.  This Court was not involved in the settlement agreement.  Moreover, even if the settlement arose out of a case in this Court, a motion to enforce a settlement agreement is essentially a suit involving a claim for breach of a contract, part of the consideration for which was dismissal of the earlier civil action.  *See Perkins v. Booker*, No. 2:08-CV-97, 2011 WL 3664689, at *3 (W.D. Mich. Aug. 19, 2011) (citing *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 381–82 (1994)).  The Sixth Circuit has held that settlement agreements are contracts governed by the principles of state contract law.  *Id.* at *4.  Therefore, Plaintiff's claim that Defendants have breached the settlement agreement will be dismissed.

B.     **Denial of proper treatment**

1.     **PREA**

Plaintiff also appears to be making a separate claim that he has been denied

proper mental health treatment to address the trauma of being sexually assaulted

when he was a minor incarcerated with adults.  Plaintiff relies on 28 CFR § 115,

which sets forth the national standards for the Prison Rape Elimination Act (PREA).

Plaintiff's reliance on the PREA as a cause of action is misplaced.

The PREA does not provide prisoners with a private right of action:

> "[W]here the text and structure of a statute provide no indication that
> Congress intends to create new individual rights, there is no basis for a
> private suit, whether under § 1983 or under an implied right of action."
> *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). Numerous Courts that
> have addressed this issue have determined that the PREA provides no
> private right of action to individual prisoners. *See, e.g.*, *Hill v. Hickman
> County Jail*, *2015 WL 5009301 (*M.D. Tenn. August 21, 2015*)*;
> *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014)
> ("[T]his Court concludes that the PREA creates no private right of
> action."); *Chapman v. Willis*, 2013 WL 2322947, at *4 (W.D. Va. May 28,
> 2013) ("There is no basis in law for a private cause of action to enforce a
> PREA violation."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D.
> Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that
> Congress intended it to create a private right of action for inmates to sue
> prison officials for non-compliance with the Act."); *Faz v. N. Kern State
> Prison*, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he PREA
> does not create a private right of action ...."); *Woodstock v. Golder,* 2011
> WL 1060566, at *9 (D. Colo. Feb. 7, 2011) ("PREA provides no private
> right of action.") (citation omitted). "The PREA is intended to address
> the problem of rape in prison, authorizes grant money, and creates a
> commission to study the issue.... The statute does not grant prisoners
> any specific rights." *Chinnici v. Edwards*, 2008 WL 3851294, at *3 (D.
> Vt. Aug. 12, 2008).

*Raines v. Unknown Parties*, No. 2:21-CV-108, 2022 WL 1616946, at *6 (W.D. Mich.

May 23, 2022).

2.      **Eighth Amendment**

Plaintiff's complaint could also be construed to assert a § 1983 claim under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."

*Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985).

10

The Sixth Circuit has expressly recognized that "the psychological trauma from being raped . . . in prison could give rise to a 'substantial risk of serious harm' such that a deliberate refusal to treat a victim could violate the Eighth Amendment." *Lucas v. Chalk*, 785 F. App'x 288, 291–92 (6th Cir. 2019) (quoting *Farmer* [*v. Brennan*]*,* 511 U.S. [825] at 828 [(1994)]; citing *Nelson v. Shuffman*, 603 F.3d 439, 448–49 (8th Cir. 2010), as declining summary judgment on a deliberate indifference claim where the doctor had failed to treat a prisoner for "psychological trauma" arising from "violent sexual assault"; and citing 34 U.S.C. § 30301(11) & 14(d) ("Victims of prison rape suffer severe physical and psychological effects[,]...[including] post-traumatic stress disorder, depression, suicide, and the exacerbation of existing mental illnesses.")); *accord Doe v. Scroggy*, No. 5:04-CV-173 (DF), 2006 WL 3022878, at \*7 (M.D. Ga. Oct. 23, 2006) ("Sexual assault is clearly a serious injury. Even when a victim of sexual assault does not suffer any physical injury, there is no question that a sexual assault can have a devastating psychological impact on the victim if the victim is not afforded proper psychiatric treatment. Accordingly, the Court finds that the sexual assaults alleged by Plaintiff created an objectively serious psychological need.").

*Gennoe v. Washburn*, No. 3:19-CV-00478, 2021 WL 3130834, at \*7 (M.D. Tenn. July 23, 2021).

Assuming that Plaintiff has alleged an objectively serious psychological need, the Court must address whether either Defendant has acted with deliberate indifference.

### a. Defendant MDOC

Initially, the Court notes that Plaintiff's Eighth Amendment claim against the MDOC fails because he may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v.*

11

*Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.  Therefore, because Plaintiff may not bring an Eighth Amendment claim against the MDOC, the Court dismisses the MDOC.

### b.    Defendant Washington

With respect to Defendant Washington, Plaintiff asserts that the mental health treatment he receives is inadequate because it does not comply with the settlement agreement in *Does. v. Mich. Dep't of Corr.*, Nos. 13-1196-CZ & 15-1006-CZ. (*See* ECF No. 1-1.)  Plaintiff alleges that his sessions consist of five- or ten-minute mental health consultations and that when he expresses the "slightest concerns of suicidal ideations" he is placed in isolation.  (ECF No. 1, PageID.6.)  Plaintiff states that Defendant Washington knew or should have known this because MDOC employees are limited licensed mental health providers who are incapable of providing a "community level of care" to sexual assault victims.  (*Id.*, PageID.9.)

12

The Court notes that the fact that Plaintiff believes the mental health care he is receiving does not meet the standards required by the settlement agreement is irrelevant to a determination of whether the care he received violated the Eighth Amendment.  Plaintiff concedes that he has received and continues to receive mental health treatment.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must show that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *See Miller v.*

13

*Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations regarding the adequacy of his treatment appear to relate to the length of the sessions and to the fact that the treatment is being provided by "limited licensed mental health providers." Such allegations, without more, are insufficient to show that the care he received was "so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605, or that it was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller*, 408 F.3d at 819.

Nor does Plaintiff allege facts showing that Defendant Washington was aware of any shortcomings in the mental health treatment he received. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell*, 867 F.2d at 959).

14

Plaintiff fails to allege facts supporting his assertion that the mental health care he received violated the Eighth Amendment and that Defendant Washington was deliberately indifferent to his medical need for mental health treatment. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendant Washington.

### C.    Other state law claims

Finally, the Court notes that Plaintiff asserts an "innocent misrepresentation" claim.  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." ." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). . Section 1983 does not provide redress for a violation of a state law. . *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). .

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. . Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. . *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). . In determining whether to retain supplemental jurisdiction, "[a] district court should

consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." ." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). . Dismissal, however, remains "purely discretionary." ." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's breach of settlement claims will be dismissed without prejudice for lack of jurisdiction.  Plaintiff's § 1983 claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would

not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  June 17, 2024                        /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge

17